# In the United States Court of Federal Claims

No. 07-532C
Filed: July 7, 2008
**TO BE PUBLISHED**

| | | |
|---|---|---|
| AXIOM RESOURCE MANAGEMENT, INC., Plaintiff, | * | |
| v. | * | Bid Protest; Injunction; Notice Of Appeal As Of Right, Fed. R. App. P. 3(b); Organizational Conflicts of Interest, 48 C.F.R. § 9.5; Permanent Injunction; Post-Judgment Jurisdiction; Public Interest; Set-Aside Of Contract Award; Stay Pending Appeal, Fed. R. App. P. 8(a); RCFC 62(c). |
| THE UNITED STATES, Defendant, | * | |
| and | * | |
| LOCKHEED MARTIN FEDERAL HEALTHCARE, INC., Defendant-Intervenor. | * | |

**James S. DelSordo**, Argus Legal, LLC, Manassas, Virginia, Counsel for Plaintiff.

**William G. Kanellis**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**LTC James A. Lewis**, United States Army Legal Services Agency, Arlington, Virginia, Of Counsel.

**Marcia G. Madsen**, Mayer Brown, LLP, Washington, D.C., Counsel for Defendant-Intervenor.

**MEMORANDUM OPINION AND FINAL ORDER DENYING TO STAY THE FEBRUARY 26, 2008 FINAL ORDER.**

**BRADEN,** ***Judge***.

## I. BACKGROUND.[1]

On September 28, 2007, the United States Court of Federal Claims issued a Memorandum Opinion and Order, determining that the United States Department of Defense ("DOD") Contracting Officer assigned to a July 30, 2006 Request for Quotation No. 154160 ("CO") violated Federal Acquisition Regulation ("FAR") § 9.504(a),[2] in failing to identify an "impaired objectivity" conflict[3] and awarding a TRICARE Management Activity ("TMA") contract ("the contract") to Lockheed Martin Federal Healthcare, Inc. ("Lockheed Martin") on December 6, 2006.[4] *See Axiom I*, 78 Fed. Cl. at 599-600. In addition, the court determined that the CO did not exercise sound discretion, as required by FAR § 9.504(e), in developing an Organizational Conflict of Interest ("OCI") mitigation plan to correct the belatedly identified "unequal access to information" conflict,[5] *i.e.*, a plan that: did not afford Lockheed Martin any significant competitive advantages; was enforceable, *i.e.*, subject to court order; and otherwise did not impose any anticompetitive effects on future procurements. *Id*. at 600.

On December 17, 2007, Lockheed Martin proposed incorporating an OCI mitigation plan into a modification of the contract, but the Government subsequently refused to allow an independent auditor to submit an annual compliance report to the court regarding implementation of the mitigation plan. *See* 12/17/07 TR at 12-14; *see also* Gov't Resp. To Show Cause at 3 (arguing that

---

[1] A complete statement of facts and procedural history of this bid protest is set forth in *Axiom Res. Mgmt*. v. *United States*, 78 Fed. Cl. 576, 576-87 (2007) ("*Axiom I*") and *Axiom Res. Mgmt*. v. *United States*, 80 Fed. Cl. 530, 530-35 (2008) ("*Axiom II*").

[2] FAR § 9.504(a) provides that the CO is required to: "[i]dentify and evaluate potential organizational conflicts of interest as early in the acquisition process as possible[.]" 48 C.F.R. § 9.504(a).

[3] An "impaired objectivity" conflict occurs when a government contractor has conflicting obligations under different government contracts, that compromises the contractor's ability to render impartial judgment. *See* 48 C.F.R. § 9.505-3; *see also Aetna Gov't Health Plans, Inc.*, Comp. Gen. B-254397.15, 1995 U.S. Comp. Gen. LEXIS 502, 1995 WL 449806 at *9.

[4] On April 25, 2008, counsel for Defendant-Intervenor filed a Motion To Amend/Correct Party Name advising the court that the name "Lockheed Martin Federal Health Insurance, Inc.," previously reported in the docket, should be corrected to reflect the proper legal entity, *i.e.*, "Lockheed Martin Federal Healthcare, Inc." Since Defendant-Intervenor filed a Notice of Appeal, on that same date, the court directed Defendant-Intervenor to correct the party name on appeal. The court herein will utilize Defendant-Intervenor's corrected name.

[5] An "unequal access to information" conflict occurs when a government contractor has access to non-public information in connection with performance of a government contract that may afford a competitive advantage in subsequent competition for a government contract. *See* 48 C.F.R. § 9.505-4; *see also Aetna Gov't Health Plans, Inc.*, Comp. Gen. B-254397.15 at *8-9.

TMA has exclusive authority to administer the contract and the court does not have jurisdiction to "administer" bid protest judgments); AR 60-88 (Lockheed Martin August 14, 2006 OCI Mitigation Plan and Comparative Analysis, Lockheed Martin Corporate Policy Statement for OCI, and a List of Lockheed Martin Activities Supporting TMA).

On February 26, 2008, the court issued a Memorandum Opinion and Final Order granting, in part, Plaintiff's July 25, 2007 Motion For Judgment On The Administrative Record, and ordering that the contract be set aside on July 21, 2008, the date on which the initial term expired and the first option term was to be exercised. *See Axiom II*, 80 Fed. Cl. at 530-35. By allowing the initial term of the contract to be completed, the court afforded the Government five months to issue a new Solicitation, if the Government intended to continue to outsource the TMA healthcare program, and to plan for an orderly transition. *See id.* at 539 (recognizing that the court's equitable powers "should be exercised in a way which best limits judicial interference in contract procurement.").

On April 25, 2008, Lockheed Martin filed a Notice Of Appeal to the United States Court of Appeals for the Federal Circuit. On April 28, 2008, the Government filed a Notice Of Cross Appeal.

On June 16, 2008, the Government returned to the United States Court of Federal Claims, to request a stay to set-aside the February 26, 2008 Final Order, until the United States Court of Appeals for the Federal Circuit considered the merits of the appeal ("Gov't Mot. Stay"). On June 20, 2008, the Government also filed a Motion For Expedited Consideration And Correction Of Its June 16, 2008 Motion, requesting that the court consider the Government's Stay Motion on an expedited basis. On June 23, 2008, the court informed the parties that Plaintiff should file any Response to the Government's motions no later than July 2, 2008, and the court would issue an order by July 3, 2008.

On July 2, 2008, Plaintiff filed an Opposition To The Government's Motion To Stay The Court's Order ("Pl. Opp."), together with an Exhibit ("Ex. 1"). In the July 2, 2008 Opposition, Plaintiff informed the court that on June 18, 2008, "the Government announced its intention to seek proposals under the TRICARE Evaluation, Analysis, and Management Support Program ("TEAMS")" for a multiple award contract. *See* Pl. Opp. at 3. On that same date, the CO informed Plaintiff of an OCI that would exclude Plaintiff from bidding on any future TEAMS RFPs. *Id.* Plaintiff was advised, however, that it could bid on the TRICARE Policy and Operations Directorate, TRICARE Operations Division ("TPOD/OGC") procurement (part of the TEAMS contract and covering the same work as the pending contract), but only if the court's February 26, 2008 Final Order "remained in effect." *Id.*; *see also* Pl. Ex. 1 (July 2, 2008 Notice of Proposed Bid Protest Filing from Plaintiff's counsel to Acting Clerk, United States Court of Federal Claims) (confirming that the TPOD/OGC procurement "is the same work that was the subject of prior litigation at the Court."). Notably, the court was not informed of the June 18, 2008 procurement in the Government's June 20, 2008 filing or otherwise.

On July 3, 2008, the court convened a status conference to inform the parties that the court had decided to decline to issue a stay and would issue a written decision on July 7, 2008.

## II. DISCUSSION.

### A. Jurisdiction

Pursuant to Rule of the United States Court of Federal Claims ("RCFC") 62(c), the United States Court of Federal Claims may "suspend . . . an injunction during the pendency of [an] appeal . . . as it considers proper for the security of the rights of the adverse party." RCFC 62(c); *see also J.W.K. Int'l Corp*. v. *United States*, 49 Fed. Cl. 364, 366 (2001) (stating that the United States Court of Federal Claims has held that "that jurisdiction to grant a stay of the [c]ourt's own judgment continues to reside in [the United States Court of Federal Claims] until the Court of Appeals issues its mandate.") (citations omitted). Accordingly, the court has jurisdiction to adjudicate the Government's pending motions.

### B. Standard For Staying Judgment Pending Appeal.

The predecessor to the United States Court of Federal Claims recognized that a stay pending appeal is "an extraordinary remedy." *Golden Eagle Refining Co.* v. *United States*, 4 Cl. Ct. 622, 624 (1984) (quoting *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Express & Station Employees* v. *Nat'l Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966)). For this reason, "a stay pending appeal requires more than base suppositions of disapproval from a party dissatisfied with the holding of a judicial tribunal." *Minor Metals* v. *United States*, 38 Fed. Cl. 379, 381 (1997) (quoting *Golden Eagle*, 4 Cl. Ct. at 624). The most important factors that the court should consider are: whether there will be irreparable injury to the movant, if the relief is denied; whether the other parties will be substantially harmed, if the stay is granted; and whether the public interest requires issuance of a stay. *Id*. Whether the movant is likely to prevail on appeal is not relevant if these three factors weigh heavily in the movant's favor. *Id.* If not, the movant must make "a more substantial showing of the likelihood of success on the merits." *Id.*

### C. The Government's Motions To Stay Judgment.

#### 1. The Government's Arguments.

The Government argues that "compelling reasons exist" for staying the court's February 26, 2008 Order. *See* Gov't Stay Mot. at 3. First, a stay is necessary to preserve the Government's ability to maintain an appeal, because setting-aside the contract award would render the pending appeal moot. *Id*. (citing *Powell* v. *McCormack*, 395 U.S. 486, 496 (1969) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.")).

Second, the Government contends that it will prevail on the merits of the appeal for the reasons discussed in "earlier pleadings"[6] and "given the absence of dispositive appellate court

---

[6] *See, e.g.,* Government's August 3, 2007 Response To Plaintiff's Judgment On The Administrative Record at 18-19 ("As evidenced by the Army's multiple, repeated efforts to ensure,

guidance upon [OCI and mitigation issues in bid protests], it is certainly plausible, if not likely, that the court of appeals will agree with [the Government's] interpretation of [these issues] in this case." *Id*. at 4.

Third, a stay will serve the public interest, because it would afford the United States Court of Appeals for the Federal Circuit an opportunity to provide guidance on OCI and mitigation issues, regarding the pending and future solicitations. *Id.* at 4-5. Without such guidance, even if the Government issued a new solicitation, future protests likely will follow by disappointed bidders and undermine judicial economy. *Id*. at 5.

Finally, issuance of a stay would present no harm to other interested parties, because a new solicitation would not necessarily be awarded to Plaintiff, and even it were, such an award may be "tied up in further litigation." *Id*.

**2. The Plaintiff's Response.**

Plaintiff responds that the Government does not face irreparable injury if the February 26, 2008 Final Order is not stayed, because the Government will have standing to challenge the court's determination that the Government acted "arbitrarily and capriciously." *See* Pl. Opp. at 6. More importantly, the Government has failed to demonstrate a likelihood of prevailing on the merits on appeal, because the Government's argument that the court improperly supplemented the Administrative Record and accepted outside expert testimony is contrary to "a substantial body of case law." *Id*. at 5 (citing *Vantage Assocs., Inc.* v. *United States*, 59 Fed. Cl. 1, 13 (2003) (information outside the Administrative Record may be considered by stipulation or court order)).

Finally, Plaintiff would be substantially harmed if the stay were imposed, because the Government may try to bar Plaintiff from competing for future TEAMS contract work, except for the pending June 18, 2008 RFP covering work under the pending contract, but *only* if the court's February 26, 2008 Order "remain[s] in effect." *Id*. at 6. Therefore, "[s]taying the [c]ourt's order would have the effect of completely barring [Plaintiff] from competing for the work that was subject to this protest." *Id*. at 6.

---

pursuant to FAR subpart 9.5, that any potential OCI issue was neutralized by Lockheed [Martin]'s mitigation efforts, plaintiff has failed to show a clear and prejudicial violation of applicable statutes or regulations.") (internal citation and quotation omitted); Government's August 3, 2007 Response To Plaintiff's Judgment On The Administrative Record at 18-19 ("A review of Lockheed [Martin]'s mitigation plan reveals that it adequately mitigates any existing or potential OCI.") (citing AR 62-67) (Lockheed Martin August 14, 2006 OCI Mitigation Plan); Government's January 15, 2008 Response To The Court's Show Cause Order at 6-7 ("[T]he Government is entitled to the presumption that the TMA will enforce its own mitigation policies, as well as those of Lockheed [Martin].").

### 3. The Court's Resolution.

On February 26, 2008, the court ruled against the Government on the dispositive issues of this bid protest. *See Axiom II*, 80 Fed. Cl. at 535-36 ("The court has determined that the CO did not identify and analyze a potential 'unequal access to information' conflict, as required by FAR § 9.504(a), and abused his discretion in violation of FAR § 9.504(e) by awarding the Task Order to Lockheed Martin, without developing a mitigation plan that does not afford Lockheed Martin any significant competitive advantages, is enforceable, and otherwise does not impose any anticompetitive effects on future competition."). The Government did not seek reconsideration of that Memorandum Opinion and Final Order, and the pending motions have not advanced any new grounds that would support success on the merits on appeal. *See* Gov't Stay Mot. at 4 ("Our *earlier* pleadings in this [c]ourt outline arguments that we will present in our appeal, and reflect why we believe that we will prevail upon the merits of the appeal.") (emphasis added); *see also Minor Metals*, 38 Fed. Cl. at 381 (the moving parties on a motion for injunction pending appeal "provided the court with no substantive information or argument that would compel issuance of the instant emergency motion."). As discussed in *Axiom II*, the potential and unmitigated "unequal access to information" and "impaired objectivity" OCIs present in the contract may undermine ongoing and future TRICARE management activity and the integrity of the federal procurement process, if the option period of the contract is not set-aside. *See Axiom II*, 80 Fed. Cl. at 537-38 ("[T]he potential 'unequal access to information' and 'impaired objectivity' conflicts may undermine ongoing and future TRICARE management activity, if not adequately mitigated."); *see also Labat-Anderson, Inc.* v. *United States*, 65 Fed. Cl. 570, 581 (2005) ("It is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations.") (citations omitted). That remains the considered opinion of the court.

The Government filed the April 28, 2008 Notice Of Appeal on the latest date permitted under the Federal Rules of Appellate Procedure, but then waited almost two additional months before filing the June 16, 2008 Motion To Stay. *See* Fed. R. App. P. 3(b) ("When the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered."). More importantly, two days later, on June 18, 2008, the Government issued a notice to solicit a new TRICARE contract, without informing the court. Since the Government has decided to resolicit the TRICARE contract, the issuance of a stay is unnecessary. In fact, substantial harm likely will result, if a stay is granted. *See Minor Metals*, 38 Fed. Cl. at 381. As discussed in *Axiom II*, Plaintiff established that it would suffer irreparable harm, if the court did not set-aside the contract. *See Axiom II*, 80 Fed. Cl. at 536; *see also Parcel 49C Limited Partnership* v. *United States*, 31 F.3d 1147, 1151 (Fed. Cir. 1994) (recognizing that the Government has a "duty to conduct a fair procurement."); *Cardinal Maint. Serv., Inc.* v. *United States*, 63 Fed. Cl. 98, 110 (2004) ("It is well-settled that a party suffers irreparable injury when it loses the opportunity to compete on a level playing field with other bidders[.]").

Moreover, the contract at issue represents approximately 10% of Plaintiff's overall business. *See* 8/7/07 TR at 6; *see also Cardinal Maint. Serv.*, 63 Fed. Cl. at 110 ("Irreparable injury includes, but is not limited to, lost profits which would flow from the contract.") (citing *SAI Indus. Corp.* v.

*United States*, 60 Fed. Cl. 731, 747 (2004)); *see also* AR 472-77 (Contract W81XWH-06-F-0440) (contract expires on July 21, 2008, at which time the Government may exercise two one-year options). In addition, in light of Plaintiff's recent allegations that the Government intends to bar Plaintiff from competing for future TEAMS RFPs, except for the pending June 18, 2008 RFP concerning work covered by the pending contract and *only* while the court's February 26, 2008 Order "remain[s] in effect," granting a stay may prohibit Plaintiff from competing for the work subject to this protest. *See* Pl. Opp. at 6. Consequently, there is no basis for the Government's argument that "a stay would benefit" Plaintiff. *See* Gov't Mot. Dis. at 5.

Finally, the Government argues that a stay would afford the United States Court of Appeals for the Federal Circuit with an opportunity to provide "dispositive . . . guidance upon OCI and mitigation issues in bid protests." *See* Gov't Stay Mot. at 4. On June 18, 2008 the Department of Defense, General Services Administration, and National Aeronautics and Space Administration, however, issued an advance notice of proposed rule-making, inviting comment on whether the FAR's conflict of interest provisions serve the current needs of the acquisition community. *See* Organizational Conflicts of Interest, 73 *Fed. Reg.* 34,686 (June 18, 2008) (advanced notice of proposed rule-making; reopening of comment period). Again, the Government also failed to inform the court of this relevant development. Nevertheless, the court is pleased to see that the procurement agencies recognize the importance of conflict of interest considerations and the recognized need to clarify existing ambiguities. *See* Ralph C. Nash, *Organizational Conflicts of Interest: An Increasing Problem*, 20 No. 5 NASH & CIBINIC REPORT ¶ 24 (May 2006). If a new rulemaking accomplishes this objective, hopefully there will be no need for judicial review in future cases.

## III. CONCLUSION.

For the aforementioned reasons, the Government's June 16, 2008 Motion To Stay The Court's Order Of February 26, 2008 is denied. The Government's June 20, 2008 Motion For Expedited Consideration is denied as moot.

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**